## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

**CCDC OFFICE LLC,**
555 13th Street, N.W.
Washington, D.C. 20004

      **Plaintiff,**

      **v.**

**UNITED STATES DEPARTMENT OF**
**LABOR,  SETH D. HARRIS, ACTING**
**SECRETARY, MARY BETH MAXWELL,**
**ACTING DEPUTY ADMINISTRATOR,**
**WAGE AND HOUR DIVISION, AND THE**
**ADMINISTRATIVE REVIEW BOARD OF**
**THE DEPARTMENT OF LABOR, in their**
**official capacities,**
Frances Perkins Building
200 Constitution Ave., N.W.
Washington, D.C. 20210

Serve:
Attorney General of the United States
c/o Assistant attorney General for
Administration
950 Pennsylvania Ave., N.W.
Washington, D.C. 2530

United States Attorney for the District of
Columbia
c/o Civil Process Clerk
555 4th St., N.W.
Washington, D.C. 20210

      **Defendants.**

Case No. _____

## COMPLAINT

    1.     This is an action for judicial review of the decision of the Acting Secretary of the

United States Department of Labor, which was entered by the Acting Secretary's designees, the Acting Administrator of the Wage and Hour Division and the Administrative Review Board (collectively "the Department"), in the matter of *Application Of The Davis-Bacon Act To Construction of the CityCenterDC Project In The District Of Columbia*, ARB Case Nos. 11-074, 11-078, 11-082. Final agency action occurred in the form of a decision by the Administrative Review Board (ARB) issued on April 30, 2013. (Attached hereto).

2.      In the challenged action, the Department has concluded that the Davis-Bacon Act (the "DBA" or "the Act"), 40 U.S.C. § 3141, *et seq*., applies to the private construction of buildings constituting the CityCenterDC project in the District of Columbia, notwithstanding the absence of any District or federal funding, ownership, or occupancy of the buildings being constructed.  As further explained below, the Act has never before in its history been applied to such private construction work. The Department's decision violates the U.S. Constitution, the DBA itself, and the Administrative Procedure Act, and should therefore be set aside.

3.      This court has jurisdiction over this case pursuant to 28 U.S.C. § 1331 (federal question) and the Administrative Procedure Act, 5 U.S.C. § 701, *et seq*.

4.      Venue properly lies in the District of Columbia pursuant to 28 U.S.C. § 1391(e).

5.      The Defendant Acting Secretary of Labor was responsible for issuing the challenged decision through his designees the Acting Administrator of the Wage and Hour Division and the Administrative Review Board.

6.      Plaintiff CCDC Office LLC and its affiliates (hereafter the "Developers") entered into a series of agreements with the District of Columbia to develop certain real estate on the site of the former District of Columbia Convention Center in Washington, D.C. known as the CityCenterDC Project.  The Developers are threatened with immediate and irreparable injury as

a result of the ARB's decision, which denied the Developers' petition for review from an earlier

decision by the Acting Wage Hour Administrator; and the Developers therefore have standing to

pursue this action.

> A.     **Facts Pertaining To All Counts**

7.     Pursuant to D.C. Code § 10-801 (setting forth general requirements for disposal of

District property); and D.C. Code § 10-1202.15a (authorizing disposition of the former

convention center site), the Mayor and D.C. Council made findings that the property at issue was

"no longer required for public purposes." *See* Council Resolution §16-626 (June 7, 2005).

8.     Pursuant to these findings, the District agreed to sell and/or lease the ground

underlying the former site of the Convention Center to the Developers, pursuant to the Amended

and Restated Development Agreement and Land Disposition Agreement dated December 14,

2007 ("the Development Agreement"), in the following individual transactions:  (1) sale of fee

simple ownership of a parcel of the property for development as approximately 216 private

condominiums; (2) 99-year ground leases for development by the Developers into approximately

520,000 square feet of commercial office space; (3) a separate 99-year ground lease for

development by the Developers into approximately 295,000 square feet of retail space; and (4) a

separate 99-year ground lease to be developed by the Developers into approximately 458 rental

units.

9.     All of the buildings specified in the Development Agreement are and will remain

privately owned and operated, and none of them will be owned or occupied by the District.

Nothing in the above referenced agreements gives the District any ownership interest in the

buildings that are to be constructed during the 99-year term of the lease, and the District will

certainly have no ownership interest in the condominiums being constructed on the parcel that

the District has sold outright to the Developers. Whether leased or sold to the Developers, none of the agreements gives the District any right to occupy or control the buildings' use after completion of the construction, nor does the District bear any economic risk of loss from the development or operation of the buildings.

10.     As stated in the Development Agreement, the improvements that are being built on the Site are being constructed pursuant to separate construction contracts entered into between the Project Developers and whatever construction contractors they select. The District is not a party to any such construction contracts, and has no right to select any of the construction contractors.  The Developers are also responsible for the design and construction of all buildings and improvements in accordance with the terms of the controlling agreements.

11.     The Developers are overseeing and coordinating the construction of the Project, will control the buildings that are being constructed on the Site, will bear the economic risk of loss as to the development and ongoing operations, and will reap the primary economic benefits of the Project.  Although the District will receive rent under the ground leases, the benefits the District will otherwise derive from the Project are the same benefits that the District would derive from <u>any</u> successful private development.  Such typical benefits include generation of tax revenues, creation of new jobs, construction of public amenities, and creation of opportunities to construct affordable housing units.  There is nothing remarkable or unique about these public benefits accompanying development of the CityCenterDC Project.

12.     Pursuant to the foregoing agreements, no District funds are being spent in the development of the Project.  All Project buildings will be used for private business uses and <u>not</u> for any public purpose of the District. Finally, nothing in the agreements between the District and the Developers imposes any DBA requirements on the Project.

**B.     Procedural History Of  The Department's DBA Coverage Determination.**

13.     The DBA requires that "advertised specifications for every contract in excess of $2,000, to which the Federal Government or the District of Columbia is a party, for construction, alteration, and/or repair … of public buildings and public works of the Government or the District of Columbia…which requires or involves employment of mechanics and/or laborers shall contain a provision stating the minimum wages to be paid various classes of laborers and mechanics."  40 U.S.C. § 3142(a).  The Act further states that "[t]he minimum wages shall be based on the wages the Secretary of Labor determines to be prevailing for the corresponding classes of laborers and mechanics employed on projects of a character similar to the contract work … in the District of Columbia if the work is to be performed there." *Id*. at § 3142(b). Regulations issued by the Department for the purpose of implementing the DBA impose numerous administrative and financial burdens on those entities who are covered by the Act's provisions.  *See* 29 C.F.R. Parts 1, 3, and 5.

14.     Application of the Act to the CityCenterDC project would increase the cost of construction by millions of dollars and would impose numerous unanticipated burdens on the Developers and their selected construction contractors, including but not limited to reporting, possible worker reclassification, and certified payroll requirements.

15.     Nevertheless, on April 25, 2009, the Mid-Atlantic Regional Council of Carpenters (the "Carpenters") requested a ruling from the Administrator concerning the applicability of the DBA to construction associated with the Project. The Administrator delegated the task of responding to the Carpenters' request to Timothy Helm, Chief of the Branch of Government Contracts, Division of Enforcement Policy, Wage and Hour Division. Relying on factors set

forth in a 1994 Opinion of the Office of Legal Counsel of the U.S. Department of Justice, and related precedent, Helm issued a ruling on behalf of the Administrator on August 30, 2010 to the effect that DBA requirements did not apply to the CityCenterDC project.   The Helm ruling invited any interested party to submit a request for reconsideration to the Deputy Administrator within 30 days.

16.     After the passage of 30 days from the Helm ruling, relying on the apparent absence of any filing by the Carpenters of a request for reconsideration or appeal, the Developers entered into a joint venture on October 11, 2010 with an institutional investor to obtain critical financing necessary to begin construction of the Project. The joint venture parties mutually understood that the DBA did not apply to the Project, based upon the Helm ruling, and they relied on that understanding in incurring financial obligations totaling hundreds of millions of dollars and in awarding construction contracts for the project.

17.     The Carpenters filed a Request for Reconsideration 60 days after the Helm ruling, on October 29, 2010.  On May 19, 2011, the District filed an Opposition to the Carpenters' Request.  The Developers filed their own Opposition to the Carpenters' request for reconsideration on May 23, 2011. Aside from disputing the merits and untimeliness of the Carpenters' claim, to the extent that any reversal of the Helm Ruling was contemplated at this late date, the Developers requested that the Acting Administrator exercise her discretion to impose DBA coverage only on a prospective basis under 29 C.F.R. § 1.6(f), specifically to only those construction contracts entered into after the date of any such ruling.  On June 3, 2011, the Carpenters submitted a Response to the Oppositions submitted by the District and CCDC.

**C.      Ruling of the Acting Wage and Hour Administrator**

18.      On June 17, 2011, the Acting Wage and Hour Administrator issued a Final Ruling

under 29 CFR § 5.13 reversing the agency's initial ruling of August 30, 2010 and holding that

the DBA applied to the Project (hereafter "Admin. Ruling").  The Acting Administrator reversed

Helm's ruling, based on an analysis that "focuses on the regulatory definition of "public building

or public work" and related case law, rather than on the specific factors mentioned in the OLC

Opinion…." *Id*. at 4.[1]

19.      In finding that the Project constituted a "public work," the Acting Administrator

held that "because the District has considerable authority as to what is to be built, when, and by

whom, we conclude that the City Center project will be carried on by the District's direct

authority." Admin. Ruling at 6.  Significantly, the Acting Administrator identified no case in

which DBA has ever previously been found to apply in the absence of government funding,

ownership or occupancy of the project, and there has been no such case reported in the 80-year

history of the DBA.

20.      The Acting Administrator next concluded that "although…the private aspect of

the project is not insubstantial, based on the evidence of the myriad public benefits associated

with the City Center project, we conclude that the project sufficiently 'serve[s] the interest of the

general public' to constitute a 'public work.'" (Admin. Ruling at 7).  The Acting Administrator

identified no "public benefit" from the project that is materially different from the benefits

resulting from any sizeable private urban construction project. The Acting Administrator left

undisturbed Section Chief Helm's factual finding that the CityCenterDC buildings and other

---

[1]      The Acting Administrator nevertheless declared that the resulting finding of DBA coverage would have
been the same under the OLC Opinion "based on our further evaluation of the record evidence…." Admin. Ruling at
4.

works "will be primarily used for private purposes…."  (Helm Ruling at 3).

21.     Finally, the Acting Administrator held that the Act should be applied only

prospectively, but that all existing, relevant contracts, obligations, and other agreements will

have to be amended to incorporate DBA requirements from the first pay period week

immediately following the June 17, 2011 date of her Ruling.  (Admin. Ruling at 8).  Citing 29

C.F.R. 1.6(f), the Acting Administrator further declared that "[t]he District, not the Developers,

… is responsible for any increased wage and fringe benefit costs resulting from application of

the DBA to the City Center project."

### D.     Decision of the Administrative Review Board

22.     The District, the Developers, and the Carpenters all filed petitions for review from

the decision of the Acting Administrator to the Administrative Review Board ("ARB"), pursuant

to 29 C.F.R. Part 7.  The ARB issued its decision affirming the Acting Administrator on April

30, 2013 (hereafter "ARB Decision").

23.     In its decision, the ARB misstated and then declined to decide the constitutional

issue presented to it by the Developers, who had contended that application of the DBA to a

project on which no government funds were being spent violated the Spending Clause of the

Constitution, Art. I, Sec. 8.  (ARB Decision at 9, 14, n.8).[2]

24.     In any event, the ARB reaffirmed the Acting Administrator's holding that the land

disposition and lease agreements between the District and the Developers constituted "contracts

for construction" within the meaning of the DBA. In this regard, the ARB relied on inapposite

cases involving government funding of private construction pursuant to a lease for the express

purpose of government occupancy of such buildings. (ARB Decision at 10-12).  The ARB failed

---

[2] The ARB incorrectly viewed the Developers' Petition as asserting a violation of the Constitution's "taking clause." *Id*. at 9.  In reality, the Developers' contended in their Petition and Reply briefs that the application of the DBA to the CityCenterDC project in the absence of any expenditure of government funds violated the "spending clause."

to address or distinguish contrary judicial authority presented in the Developers' petition.

25.     Next, the ARB affirmed the Acting Administrator's holding that the CityCenterDC project constitutes a "public work" under the DBA, notwithstanding the apparent conflict between this holding and both the plain language and legislative history of the DBA, as well as court decisions that have previously required government expenditures of funds in order for a project to qualify as a "public work."

26.     In this regard, the ARB relied on the Department's regulatory definition of "public work" set forth at 29 C.F.R. 5.2(k).[3] According to the ARB, the CityCenterDC project meets both of the two "prongs" of the regulation, both of which must be met to establish that a project under construction is a "public work" under the DBA: (1) the ARB found that the project's construction is being carried on "directly by authority of the District," regardless of the absence of any District funds in the project (ARB Decision at 12-13); and (2) the ARB found that the project "serves the interest of the general public," regardless of whether the types of benefits resulting from the project are materially different from benefits inherent in any successful private building project (ARB Decision at 13-14).

27.     The ARB ignored or rejected all arguments by the Developers and the District who contended that neither prong of the regulatory definition of public work was met by the project, and that the Department's overbroad interpretation of the regulation itself violates the DBA's statutory language, legislative intent, and important judicial precedents.  The ARB thereupon erroneously affirmed the ruling of the Acting Administrator and held that the DBA applies to the CityCenterDC project. (ARB Decision at 15).

28.     The ARB also affirmed the Acting Administrator's further holding that the DBA

---

[3] Section 5.2(k) defines "public building or public work" to include "any building or work, the construction, prosecution, completion, or repair of which … is carried on directly by authority of or with funds of a Federal agency to serve the interest of the general public."

should be applied only to wages paid after issuance of her June 17, 2011 determination. (ARB

Decision at 15-16). In this regard, the ARB rejected the Developers' contention that the DBA

should not apply to contracts issued prior to the Administrator's final ruling.

29.    Finally, the ARB declined to address the Acting Administrator's holding that the

District is responsible for providing sufficient funding to pay any additional wage payments

required by application of the DBA to the CityCenterDC Project. The ARB declared without

explanation that "the issue of the party liable for any increase in labor costs resulting from our

disposition is not ripe for decision and is not properly before us."  (ARB Decision at 17, n. 12).

### Count I – Violation of the Spending Clause of the U.S. Constitution

30.    The foregoing paragraphs are restated and incorporated by reference.

31.    The DBA's sole constitutional authority derives from the Spending Clause, Art. I,

Sec. 8, of the U.S. Constitution.  Under that Clause, the DBA can only be constitutionally

enforced insofar as it purports to regulate the expenditure of government funds. *See South

Dakota v. Dole*, 483 U.S. 203 (1987); *Universities Research Ass'n v. Coutu*, 450 U.S. 754, 771-

73 (1981).

32.    The Department's purported application of the DBA to the CityCenterDC project,

a privately funded project which has received no government funding whatsoever, violates the

U.S. Constitution or alternatively causes the DBA to violate the Constitution, and cannot be

enforced.

### Count II – Violation of the DBA

33.    The foregoing paragraphs are restated and incorporated by reference.

34.    The plain language, legislative history, and judicial precedent applying the DBA

make clear that the Act only applies to "contracts for construction" to which the government is a

party.  The Developers have not entered into any contracts for construction with the District, as is required for coverage under the DBA.

35.     The plain language, legislative history, and judicial precedent applying the DBA also make clear that the Act applies only to contracts for construction of "public buildings" or "public works."  The CityCenterDC project is neither a "public building" nor a "public work," as is also required for coverage under the DBA.

36.     The Department's purported application of the DBA to the CityCenterDC project therefore violates each of the foregoing coverage requirements of the DBA and therefore violates the Act itself. The Department's coverage determination must be set aside on this ground as well.

### Count III – Violation of the Administrative Procedure Act

37.     The foregoing paragraphs are restated and incorporated by reference.

38.      Under the APA, a reviewing court must set aside an agency action that is "in excess of statutory jurisdiction, authority, or limitations" or is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law," based upon substantial evidence in the administrative record as a whole.  5 U.S.C. § 706(2)(A).

39.     The Department's decision purporting to apply the DBA to the CityCenterDC project violates the APA because it exceeds the Department's jurisdiction, authority and limitations; and because it is arbitrary, capricious, an abuse of discretion; and because the decision is not supported by substantial evidence in the record, and is otherwise not in accordance with the U.S. Constitution and the DBA itself. The decision also conflicts with the Department's previously announced positions and established case law over the past 80 years.

40.     Compounding the violations set forth above, the Department's application of the DBA retroactively to contracts that were signed prior to the June 17, 2011 determination of the

Acting Administrator on reconsideration constitutes an abuse of discretion that threatens

irreparable harm to the Developers and their construction contractors who entered into such

agreements based upon the good faith belief that the Department agreed that DBA did not apply

to the project.

41.     Further compounding the violations set forth above is the ARB's failure to affirm

or otherwise address the Acting Administrator's June 17, 2011 holding that the District is

responsible for providing the funds necessary to comply with the DBA as a result of the

Department's coverage decision. The ARB's erroneous and unexplained finding that this issue

was not ripe for review leaves both the District and the Developers and their investors without

guidance regarding the responsibility for payment of millions of dollars in increased payments

potentially owed to construction contractors and their employees on the project if the erroneous

DBA ruling is upheld. Contrary to the ARB Decision, the issue was ripe for review and should

have been decided.

### Count IV – Grounds for Declaratory and Injunctive Relief

42.     Absent judicial review and declaratory and injunctive relief, the Developers are

threatened with irreparable harm.  Not only will application of the Act to the CityCenterDC

project increase the project's construction costs by millions of dollars, but retroactive coverage

under the DBA will impose new and unanticipated administrative burdens on the Developers and

their construction contractors, including but not limited to reporting requirements, possible

worker reclassifications, and difficult if not impossible reconstruction of certified payrolls for

work already completed.

43.     The Plaintiff Developers have exhausted all available means to obtain the

Department's agreement not to apply the DBA to the CityCenterDC project and have no

adequate administrative remedy for the Department's unlawful finding of DBA coverage.

42.     Injunctive relief is in the public interest and threatens no harm to the Department.

**Prayer for Relief**

Wherefore, the Developers petition this Court to review and set aside the decisions of the Administrative Review Board and the Acting Wage Hour Administrator to the extent that they purport to apply the DBA to the CityCenterDC project, in violation of the U.S. Constitution, the DBA, and the APA, and:

1.     Enter an injunction preventing and restraining the Department from implementing its decision in ARB Case Nos. 11-074 and 11-078, and/or any adverse findings of the Department purporting to apply the DBA to the CityCenterDC project.

2.     Enter a judgment declaring that the decisions of the Department purporting to apply the DBA to the CityCenterDC project are erroneous and unenforceable.

3.     Grant the Developers their costs and reasonable attorneys' fees and any such other and further relief as this Court deems proper.

Dated:  May 21, 2013

*/s/ Maurice Baskin*
Maurice Baskin
LITTLER MENDELSON, P.C.
1150 17th Street N.W.
Suite 900
Washington, DC  20036
202.772.2526

Counsel for Plaintiff CCDC Office LLC